**E-filed 3/24/06**

NOT FOR CITATION

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| AMERICAN MOTORISTS INSURANCE CO., INC., <br><br>    Plaintiff, <br><br>    v. <br><br> IDEC CORPORATION, <br><br>    Defendant. | Case Number C 01-20821 JF |
| IDEC CORPORATION, <br><br>    Plaintiff, <br><br>    v. <br><br> AMERICAN MOTORISTS INSURANCE CO., INC., <br><br>    Defendant. | Case No. C 02-1723 JF (RS) <br><br> ORDER CONFIRMING APPRAISAL AWARD IN ITS ENTIRETY; DENYING AMICO'S MOTION FOR OFFSET; AND DIRECTING THE CLERK OF THE COURT TO CLOSE THE FILE IN CASE NO. C 01-20821 JF (RS) <br><br> [re: lead case doc. nos. 125, 129] |

American Motorists Insurance Company, Inc. ("AMICO") moves for a partial confirmation of the appraisal award and for an offset with respect to interest on monies previously advanced to IDEC Corporation ("IDEC"). IDEC moves for confirmation of the

appraisal award in its entirety and opposes AMICO's motion for offset.  The Court has considered the moving and opposing papers as well as the oral arguments presented at the hearing on March 24, 2006.  For the reasons discussed below, the Court will confirm the appraisal award in its entirety and deny AMICO's motion for offset.

## I. BACKGROUND

This litigation arises out of a dispute between an insurance company, AMICO, and its insured, IDEC.  On April 1, 1996, AMICO issued to IDEC a policy insuring against loss or damage to certain real properties owned by IDEC.  One of the insured properties is a building located at 1274 Anvilwood Avenue in Sunnyvale, California ("the building" or "the property").  In March 1996, IDEC entered into an agreement to sell the property "as is" to William Holt ("Holt") for $1.55 million.  In October 1996, while that sale was in escrow, and while the policy was in full force and effect, IDEC discovered that thieves had broken into the building, ripped open interior walls and stolen wiring, piping and other materials that could be sold for salvage.  IDEC notified AMICO of the loss shortly thereafter.  In December 1996, IDEC informed Holt that it was terminating the sale agreement.  The following month, AMICO advanced an initial $175,000 with respect to the loss and entered into negotiations with IDEC regarding settlement of the claim.  In March 1997, Holt filed a state court action against IDEC, seeking specific performance of the sale agreement.  Holt and IDEC reached settlement in November 1999.  Meanwhile, IDEC and AMICO continued negotiations with respect to IDEC's claim.  In March 2000, IDEC sold the property "as is" to a couple, the Halls, for $3.88 million.

In August 2001, AMICO filed a petition to compel an appraisal of the property pursuant to certain provisions of the policy.  In March 2002, IDEC filed an action in the Santa Clara County Superior Court, alleging that AMICO was acting in bad faith by delaying payment of monies owed under the policy.  AMICO removed that action to this Court on April 10, 2002 and the two actions were related.  On April 17, 2002, the Court granted AMICO's motion to compel an appraisal and appointment of an appraisal panel.  On July 31, 2002, the Court denied IDEC's motion to remand the bad faith action to state court and granted AMICO's motion to stay the bad faith action pending the appraisal.  On September 20, 2005, the Court denied AMICO's motion

for summary judgment that had been brought on the ground of lack of compensable loss under the policy.

The appraisal was completed in December 2005. With respect to the five issues as to which the parties had stipulated, the three-person appraisal panel made "No Finding" with respect to Item 1, and made findings in specific dollar amounts with respect to Items 2-5. The panel also addressed a sixth issue, but made "No Finding" with respect to Item 6. AMICO seeks partial confirmation as to only Item 4, the actual cash value of the stolen property, including the electrical system, the HVAC system, the miscellaneous interior finishes, the telephone system, the fire suppression system, the fire detection system, and other. The appraisal panel concluded that the actual cash value of the stolen property was $280,841 total. AMICO argues that the remaining items appraised by the panel are irrelevant to the instant lawsuit as a matter of law. Those items are: Item 1, the reduction in fair market value of the property due to the theft loss (No Finding); Item 2, the amount actually spent to repair or replace the stolen property ($7,400); Item 3, the fair market value of the copper stolen from the property ($5,000); Item 5, the hypothetical replacement cost of the stolen property ($521,732); and Item 6, the actual cash value of the property at the time of the loss (No Finding). IDEC argues that all of the appraised items are relevant, or potentially relevant, to the claims remaining between the parties, and requests that the Court confirm the appraisal in its entirety.

AMICO also argues that it was not legally obligated to make any payments on the loss until the appraisal award was made and that, with respect to the $175,000 that AMICO advanced on the loss, IDEC should be required to pay AMICO prejudgment interest for the period January 6, 1997 (date the monies were advanced) through December 14, 2005 (date of appraisal award).

## II. APPRAISAL AWARD

There is no dispute that the appraisal provision of the policy is a type of arbitration clause and thus is governed by the Federal Arbitration Act ("FAA"). *See Wasyl, Inc. v. First Boston Corp.*, 813 F.2d 1579, 1582 (9th Cir. 1987) (characterizing contractual appraisal provision as an arbitration provision within the scope of the FAA). Judicial scrutiny of arbitration awards is quite limited. *United Food & Commercial Workers Int'l Union v. Foster Poultry Farms*, 74 F.3d

3
Case Nos. C 01-20821 JF (RS) / C 02-1723 JF (RS)
ORDER CONFIRMING APPRAISAL AWARD IN ITS ENTIRETY ETC.
(JFLC2)

169, 173 (9th Cir. 1995). "An arbitration award must be confirmed as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority." *Id.* (internal quotation marks and citation omitted). Applying this deferential standard, the Court concludes that it must confirm the appraisal award in its entirety.

AMICO requests that the Court confirm the award only with respect to Item 4, the actual cash value of the stolen property, arguing that actual cash value is the only appropriate measure of damages in this case as a matter of law. A motion to confirm an appraisal award is not the appropriate vehicle for presenting legal arguments as to the appropriate measure of damages. To the extent that any of the other measures of damages listed in Items 1-6 may be relevant, the appraisal award is binding. However, the Court's ruling is without prejudice to a future argument that actual cash value is the appropriate measure of damages or that the appraisal values for items other than Item 4 are irrelevant.

### III. PREJUDGMENT INTEREST

AMICO argues that under the policy, AMICO was not obligated to pay any loss until the appraisal award had been made. AMICO in fact advanced $175,000 to IDEC on January 6, 1997 in partial payment of the loss. AMICO argues that, because it was not obligated to make any payments until the appraisal award was made on December 14, 2005, IDEC should be required to pay AMICO prejudgment interest on the $175,000 for the period January 6, 1997 through December 14, 2005. AMICO calculates this interest amount to be $109,478. AMICO asks that this amount be offset against any eventual damages awarded to IDEC.

AMICO has not cited, and the Court has not discovered, any authority for the proposition that when an insurer advances monies on a loss before legally obligated to do so, the insurer is entitled to recover prejudgment interest from the insured. AMICO relies upon a Texas decision, *Dolenz v. American General Fire and Casualty Co.*, 798 S.W.2d 862 (1990), which required the insured to refund the insurer monies advanced that exceeded the amount of the appraisal award, plus prejudgment interest on those monies. *Id.* at 864-65. Even assuming that this Court was inclined to follow Texas state law, *Dolenz* is factually distinguishable because there has been no determination in the instant case that the $175,000 advanced by AMICO exceeds AMICO's

4

obligation to IDEC under the policy. Accordingly, AMICO's request for offset will be denied.

### IV. ORDER

(1) The appraisal award is CONFIRMED IN ITS ENTIRETY, as set forth above;

(2) AMICO's motion for offset is DENIED;

(3) AMICO shall file an answer to IDEC's bad faith complaint in Case No. C 02-1723 JF (RS) within thirty (30) days of service of this order; and

(4) The appraisal that was the subject of Case No. C 01-20821 JF (RS) having been completed, the Clerk of the Court shall close the file in Case No. C 01-20821 JF (RS).

DATED: March 24, 2006

_____
JEREMY FOGEL
United States District Judge

Copies of Order served on:

Barrett B. Braun    bbraunlaw@yahoo.com

Jack D. Eskridge    jack@insuredlaw.com, tina@insuredlaw.com

Clifford Hirsch    chirschlaw@yahoo.com

Douglas Scott Maynard    maynardlawoffices@earthlink.net